William R. G-eiler, J.
This motion by the Board of Education of Connetquot Central School District No. 7 (hereinafter referred to as the “ Board ”) pursuant to CPLR article 75 to stay the Connetquot Teachers Association (hereinafter referred to as the “ Association ”) from proceeding to arbitration is decided as follows:
The parties herein conducted negotiations for the purpose of entering into a collective bargaining agreement for the period July 1,1971 to June 30,1972. The negotiations commenced prior to the expiration of the contract for the period July 1, 1970 to June 30, 1971 and the parties were unable to reach any kind of agreement by July 1, 1971. In fact, an impasse occurred in their talks and a State fact finder was appointed. His report was issued on October 5, 1971 and was accepted by the Board. The parties, by their duly appointed representatives signed a memorandum of agreement on November 4,1971.
The Association requested the Board to pay their members certain moneys which were allegedly due from September 1,1971 to November 15, 1971. The Board denied the request and also the subsequent grievance filed by the Association. A demand for arbitration was served upon the Board and the instant application to stay any arbitration proceedings was commenced.
What is the basis of this application by the Board? They contend that there is no contract in existence between the parties and thus there is no right to proceed to arbitration.
The Association claims that the “ memorandum of agreement ’ ’ between the negotiating teams is a valid and binding contract. The Board, on the other hand, maintains that this memorandum was never intended by either party to be the final contract.
The Board points out that approval at a public hearing was nót obtained, nor did the Board president ever sign the agreement. They also point out that authority to create a final contract was never delegated to the negotiators of either side. In short, neither party ever intended that this ‘ ‘ memorandum of agreement ” would constitute “the contract”.
The court is unable to determine, merely from the papers submitted on this application, if the memorandum of agreement was intended to be “ the contract”. There are questions of *338 fact which must be resolved by a trial before the status of the ‘ ‘ memorandum of agreement ’ ’ can be determined.
Let us assume, for the purpose of petitioner’s application to stay arbitration, that this ‘ ‘ memorandum of agreement ’ ’ did not constitute a new contract. What is the basis of the Board paying the teachers any money whatsoever? How did the Board arrive at the particular amount of money it has been paying the teachers? Under what terms and conditions of employment have the teachers been working all this time?
What reason should there be, if no contract whatsoever is in existence, for the teachers to continue to work? Why can they not strike?
The Taylor Act (Civil Service Law, art. 14) prohibits strikes by school teachers and other public employees. If public employees are prohibited from striking then they must be protected during the hiatus between the expiration date of the old contract and the signing of a new collective bargaining agreement. (See State of New York Public Employment Relations Board Case No. U-0362 — Matter of Triborough Bridge and Tunnel Auth. v. District Council 37 and Local 1396, American Federation of State, County, and Municipal Employees, AFL-CIO, 5 PERB 3064 [July 28, 1972].) Thus employees, who comply with the law, are entitled to the maintenance of the status quo during the course of negotiations.
The Board, by its own actions in 1972, indicated it was still adhering to the terms of the 1970-1971 collective bargaining agreement. In February, 1972, grievances were filed on behalf of two teachers who were denied sabbatical leaves. The Board, acting pursuant to the grievance machinery contained in the 1970-1971 agreement, granted the teachers’ request for sabbatical leaves.
The Board cannot choose what provisions of the 1970-1971 agreement it will follow. It must maintain the status quo until a new contract is consummated and certainly where compliance by the Association with the Taylor Act is uncontested.
The public policy of this State, as enunciated in section 200 of the Civil Service Law, states that labor disputes should be settled by procedures adopted by employers and employees. The parties have settled upon arbitration in their 1970-1971 contract as the means to settle their disputes. A dispute has arisen as to whether the teachers are entitled to certain moneys. The 1970-1971 contract, if the memorandum agreement is not a contract, is still in effect as it represents the status quo.
The petition to stay arbitration is dismissed.