■ In the Matter of C.C.L.S., INC., Respondent, v STEVEN BARUCH et al., Constituting the Zoning Board of Appeals of the Town/Village of Harrison, Appellants. — In a proceeding pursuant to CPLR article 78 to review a determination of the Zoning Board of Appeals of the Town of Harrison, dated October 10, 1979 and made after a hearing, which denied petitioner's application for a zoning variance, the appeal is from a judgment of the Supreme Court, Westchester County, dated February 7, 1980, which (1) granted the application, (2) annulled the determination, and (3) directed the issuance of a permit to the petitioner. Judgment reversed, on the law, without costs or disbursements, and the petition is granted only to the extent that the determination is annulled and the matter is remitted to appellants for further proceedings consistent herewith. On September 13, 1979 petitioner applied for a variance "to permit the continuation of the use of the premises as a warehouse (dry products), and the use of part of the interior of the building for the storage of passenger automobiles and to continue the use of part of the interior as office space." A similar application had been made and denied in June of 1979. The property for which a variance was sought is in a "Residence B Zone". The building inspector denied petitioner's application and petitioner appealed to the zoning board of appeals. At a hearing before the zoning board, it was adduced that petitioner had taken title to the subject premises on June 22, 1979. From 1948 to the time of the sale to petitioner, the property, a 200- by 200-foot parcel, was used by the Toro Sales Co. as a distribution center for lawnmowers and lawnmower parts. Before 1948, the property was used first as a trolley car barn and then for the sale of lawn equipment. Petitioner owns the lot next door to the premises at issue and uses it in connection with its limousine service. Petitioner intended to use the subject premises to store limousines. "In the back of the premises" is a small repair shop occupied by one Mr. De Modugno for the fixing of Toro machines. Petitioner hoped to retain him as a tenant. Other than the machine shop, petitioner plans to use and occupy the property for its own purposes. Since purchasing the property, petitioner has cleaned it and made exterior improvements. Petitioner planned to install fences and lights to deter vandalism. It paid $155,000 for the subject premises. The testimony of a representative of the former owner of the building and of a neighboring homeowner indicated that petitioner's proposed use of the premises would be less intrusive than that of Toro, the previous owner. However, two other neighbors expressed objections. One testified that petitioner had already begun the use for which it was seeking permission, and that such use caused noise 24 hours a day. Petitioner's representative admitted the business was open 24 hours, but stated there was little activity between 11:00 P.M. and 5:00 A.M. and that petitioner would try to respect the neighbors' wishes. The other neighbor expressed fears that petitioner would rent office space to outsiders. Petitioner's representative answered that petitioner intended to sell part of the property on which two-family houses (a conforming use) would be built and that petitioner would agree to a variance conditioned

on its not renting any part of the premises to outsiders. The board voted four to three to deny the variance, indicating in its decision that it was not satisfied by petitioner's proof that its use of the property would be any more desirable than that of its predecessor. Petitioner then commenced the instant proceeding to review the board's determination. Special Term granted the petition and annulled the determination, finding that the board could not legally deny petitioner the right to continued use of the office space and lawnmower repair facility in the building. Special Term rejected the board's finding that a reasonable use of the land was available to petitioner as not being based on substantial evidence, since the record showed it was unlikely that the structure would be designated a landmark and since demolition of the structure to allow construction of conforming residences would not be economically feasible. Special Term also found that the proposed use would lessen, rather than increase, traffic and would otherwise have a positive effect. Petitioner sought relief from the application of the Harrison Zoning Ordinance on two alternative theories. The first was that its use was a continuation of a nonconforming use begun by its immediate predecessor in title to the subject premises. Appellants contended that any nonconforming use of the premises had been adandoned for 10 months and could not, therefore, be reinstated (see Harrison Zoning Ordinance, § 72-9-6, subd [b]). It is not clear from the record before us whether 10 months had passed from the time the previous owner discontinued the prior nonconforming use to the time petitioner began storing cars in the structure. Without any information in the record, this court cannot review appellants' claim with respect to the abandonment issue (cf. *Matter of Mandell v Purcell,* 54 AD2d 935). Furthermore, an issue exists as to whether, in fact, the manner in which the petitioner is utilizing the property at the present time truly constitutes a continuation of the prior nonconforming use or whether it is so different as to be deemed to have extinguished the prior use and to constitute a new nonconforming use. Petitioner's second theory was that it was entitled to a use variance because of hardship as defined both by the Harrison Zoning Ordinance (see §§ 72-10-5.1, 72-10-5.3) and by the criteria outlined by the Court of Appeals in *Matter of Otto v Steinhilber* (282 NY 71, 76, mot for rearg den 282 NY 681). Again, however, we find the record insufficient to allow review of the determination. Petitioner did not offer any "dollars and cents" proof of loss from which Special Term could have inferred hardship and annulled the determination (see *Matter of Crossroads Recreation v Broz,* 4 NY2d 39, 44). Accordingly, a new hearing is required, at which the zoning board of appeals should take testimony concerning the issues of abandonment of the prior nonconforming use and hardship under the criteria outlined in both the local ordinance and *Matter of Otto v Steinhilber (supra)*. The board should also specifically address these issues in its decision as well as making a finding as to whether the present use is substantially a continuation of the prior nonconforming use, or whether it constitutes a new use, in order to facilitate further review, if necessary. Mollen, P. J., Hopkins, Titone and Weinstein, JJ., concur.